UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHRISTOPHER D. DYAL,

                   Plaintiff,

v.

                                  Case No. 3:17-cv-933-J-34JBT

PINKSTON AND CARTER,

                   Defendants.

_____

**ORDER**

**I. Status**

Plaintiff Christopher D. Dyal, an inmate of the Florida penal system, initiated this action on August 15, 2017, by filing a pro se Civil Rights Complaint (Doc. 1). Dyal filed an Amended Complaint (Doc. 8) on October 16, 2017, a Second Amended Complaint (Doc. 13) on December 19, 2017, and a Third Amended Complaint (TAC; Doc. 15) with exhibits (P. Exs., Docs. 15-1 through 15-3) on March 2, 2018. In the TAC, he asserts claims pursuant to 42 U.S.C. § 1983 against Defendants Truman Pinkston and Patrick Carter, supervisors of the wastewater treatment (WT) plant at Florida State Prison (FSP). He states that Defendants violated his federal rights when they failed to protect him from harmful health risks at the WT plant from May through June 2016. As relief, he requests compensatory, punitive, and nominal damages as well as declaratory relief.[1]

This matter is before the Court on Defendants Carter and Pinkston's Motion for Summary Judgment (Motion; Doc. 35). They submitted exhibits in support of the Motion.

_____

[1] The Court granted Dyal's request to voluntarily dismiss his injunctive-relief request. See Order (Doc. 26).

See Def. Exs., Docs. 35-1 through 35-7.[2] The Court advised Dyal of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion to dismiss or a motion for summary judgment would represent a final adjudication of this case which may foreclose subsequent litigation on the matter, and gave him an opportunity to respond to the Motion. See Order (Doc. 16); Summary Judgment Notice (Doc. 37). Dyal responded. See Amended Response to Defendants' Summary Judgment and Counter Summary Judgment (Amended Response; Doc. 61). He also submitted exhibits.[3] See P. Exs., Docs. 61-1 through 61-8. Defendants' Motion is ripe for review.

## II. Plaintiff's Allegations

In his TAC, Dyal asserts that, on multiple occasions from May through June 2016, Defendants Carter and Pinkston forced him to rake and shovel waste and carry the waste-filled garbage can up twenty to thirty steps to dump the contents into a dumpster. See TAC at 12, 14. He states that Defendants equipped him with only rubber gloves and boots. See id. He avers that Defendants should have provided him with additional personal protective equipment (PPE), such as a face mask and clothing protection. See id. Dyal also maintains that Defendants threatened him with confinement, and he lost his opportunity to participate and complete the WT class. See id. He states that his multiple PPE requests were denied. See id. According to Dyal, Pinkston knew him from his previous incarceration (2004-2006 and 2010-2011) when he worked at the FSP welding

---

[2] The Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[3] The Court granted Dyal additional time to obtain discovery. See Orders (Docs. 51, 59); Defendants' Notice of Compliance with Court's Order (Doc. 60).

shop and WT plant. <u>See</u> <u>id.</u> at 13. He avers that when Pinkston "noticed" he, Dyal, was in prison again, Pinkston told Dyal that he was going to "break" him. <u>Id.</u> He asserts that Pinkston told Carter to discriminate against Dyal. <u>See</u> <u>id.</u> at 15. According to Dyal, when he told Defendants about his injuries a few days before May 18, 2016, they advised him to report to sick call. <u>See</u> <u>id.</u> at 16. He avers that Defendants violated "the proper process" when they failed to complete accident reports. <u>Id.</u> He declares that he suffered with face, mouth, neck, and arm sores, and has permanent facial and bodily scarring. <u>See</u> <u>id.</u> at 15, 18.

### III. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure (Rules(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[4] An issue is

---

[4] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995)

---

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable.

(citing <u>Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994)).

## IV. Summary of the Arguments

In the Motion, Defendants Carter and Pinkston assert that there are no genuine issues of material fact, and therefore, the Court should grant summary judgment in their favor as to Dyal's Eighth and Fourteenth Amendment claims against them. <u>See</u> Motion at 5-13. They also maintain that they are entitled to qualified immunity. <u>See</u> <u>id.</u> at 13-17. In his Amended Response, Dyal requests that the Court deny Defendants' Motion, and grant summary judgment in his favor under Rule 56(f).[5] <u>See</u> Amended Response at 2, 10, 14, 16-17, 25.

## V. Law

### A. Eighth Amendment Deliberate Indifference

The Eleventh Circuit has explained the requirements for an Eighth Amendment violation.

> "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones ...." <u>Farmer</u>, 511 U.S. at 832, 114 S. Ct. at 1976 (internal quotation and citation omitted).[6] Thus, in its prohibition of "cruel and unusual punishments," the Eighth Amendment requires that prison officials provide humane conditions of confinement. <u>Id.</u> However, as noted above, only those conditions which objectively amount to an "extreme deprivation" violating contemporary standards of decency are subject to Eighth Amendment scrutiny. <u>Hudson</u>, 503 U.S. at 8-9, 112 S. Ct. at

---

[5] Federal Rule of Civil Procedure 56(f)(1) gives the Court the discretion to "grant summary judgment for a nonmovant" after providing notice to the opposing party.

[6] <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).

> 1000.[7] Furthermore, it is only a prison official's subjective deliberate indifference to the substantial risk of serious harm caused by such conditions that gives rise to an Eighth Amendment violation. Farmer, 511 U.S. at 828, 114 S. Ct. at 1974 (quotation and citation omitted); Wilson, 501 U.S. at 303, 111 S. Ct. at 2327.[8]

Thomas v. Bryant, 614 F.3d 1288, 1306-07 (11th Cir. 2010). The Eighth Amendment also requires prison officials to "take reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). However, not every injury that a prisoner suffers as a result of a prison condition necessarily equates to a constitutional violation. See Goodman v. Kimbrough, 718 F.3d 1325, 1333 (11th Cir. 2013). Only injuries that occur as a result of a prison official's deliberate indifference rise to the level of an Eighth Amendment violation. See Farmer, 511 U.S. at 834.

Recently, the Eleventh Circuit explained the requirement of deliberate indifference to a substantial risk of harm as follows:

> To establish a § 1983 claim for deliberate indifference, a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."[9]
>
> **The first element** of deliberate indifference — whether there was a substantial risk of serious harm — is assessed objectively and requires the plaintiff to show "conditions that were extreme and posed an unreasonable risk of serious

---

[7] Hudson v. McMillian, 503 U.S. 1 (1992).

[8] Wilson v. Seiter, 501 U.S. 294 (1991).

[9] Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (quoting Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 (11th Cir. 1995)).

injury to his future health or safety."[10] **The second element** — whether the defendant was deliberately indifferent to that risk — has both a subjective and an objective component. Subjectively, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... also draw the inference."[11] Objectively, the official must have responded to the known risk in an unreasonable manner, in that he or she "knew of ways to reduce the harm" but knowingly or recklessly declined to act.[12] **Finally**, the plaintiff must show a "necessary causal link" between the officer's failure to act reasonably and the plaintiff's injury.[13]

Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019) (per curiam) (emphasis added);

Johnson v. Bessemer, Ala., City of, 741 F. App'x 694, 698-99 (11th Cir. 2018) (per curiam).

The Eleventh Circuit has explained:

Proof of deliberate indifference requires a great deal more than does proof of negligence: "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Purcell, 400 F.3d at 1319-20 (emphasis supplied) (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)).[14]

---

[10] Lane, 835 F.3d at 1307.

[11] Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 617 (11th Cir. 2007) (quoting Farmer, 511 U.S. at 837).

[12] Rodriguez, 508 F.3d at 620 (quoting Hale, 50 F.3d 1583).

[13] Rodriguez, 508 F.3d at 622-23.

[14] Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga., 400 F.3d 1313 (11th Cir. 2005).

> In other words, a plaintiff in [Dyal]'s position must show not only that there was a substantial risk of serious harm, but also that [Defendants] "subjectively knew of the substantial risk of serious harm and that [they] knowingly or recklessly disregarded that risk." Hale, 50 F.3d at 1583 (alteration omitted) (internal quotation marks omitted). Whether prison officials had the requisite awareness of the risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842, 114 S. Ct. at 1981 (citation omitted). At the same time, the deliberate indifference standard - and the subjective awareness required by it - is far more onerous than normal tort based standards of conduct sounding in negligence: "Merely negligent failure to protect an inmate from attack does not justify liability under [§] 1983." Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam). And[,] needless to say, to defeat a motion for summary judgment, [a plaintiff] must adduce specific evidence from which a jury could reasonably find in his favor; "[t]he mere existence of a scintilla of evidence in support of [his] position will be insufficient." Anderson, 477 U.S. at 252, 106 S. Ct. at 2512.

Goodman, 718 F.3d at 1332 (emphasis deleted); Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016) (per curiam) (stating that a plaintiff who claims deliberate indifference must prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence"); Scott v. Miami Dade Cty., 657 F. App'x 877, 883 (11th Cir. 2016) (stating that "a plaintiff must allege facts that would allow a jury to conclude that: the defendant actually knew that the plaintiff faced a substantial risk of serious harm" (subjective component), and "the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner" (objective component)).

**B. Qualified Immunity**

The Eleventh Circuit has stated:

> The qualified-immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted).

> As a result, qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). But the doctrine's protections do not extend to one who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks and alteration omitted).

> To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it is clear that Defendant Officers satisfied this requirement, as they engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions.

> Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [plaintiff] to demonstrate that qualified

immunity is inappropriate. See id. To do that, [plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [plaintiff's] constitutional right and that that right was "clearly established ... in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part on other grounds by Pearson, 555 U.S. 223, 129 S.Ct. 808. We may decide these issues in either order, but, to survive a qualified immunity defense, [the plaintiff] must satisfy both showings. Maddox, 727 F.3d at 1120-21 (citation omitted).

Jones v. Fransen, 857 F.3d 843, 850-51 (11th Cir. 2017). The Court has instructed:

Because § 1983 "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation," Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (citation omitted), each defendant is entitled to an independent qualified immunity analysis as it relates to his or her actions and omissions. So[,] we must be careful to evaluate a given defendant's qualified immunity claim, considering only the actions and omissions in which that particular defendant engaged.

Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018).

## VI. Analysis[15]

### A. Eighth Amendment Deliberate Indifference

Defendants Carter and Pinkston assert that they are entitled to summary judgment as to Dyal's Eighth Amendment deliberate indifference claims against them. Pursuant to 28 U.S.C. § 1746, they submitted Declarations in support of their summary judgment request. See Def. Exs., Docs. 35-3, 35-4, Declarations of Patrick Carter (Carter

---

[15] For purposes of summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to Plaintiff. Thus, the facts described in the Court's analysis may differ from those that ultimately can be proved.

Decl.) and Truman Pinkston (Pinkston Decl.). In his Declaration, Carter states in pertinent part:

> My name is Patrick Carter and I am currently employed by the Florida Department of Corrections ("FDOC"). I currently work at Florida State Prison ("FSP") and am assigned to oversee inmates working in waste water treatment at FSP.
>
> It has come to my attention that through the filing of Plaintiff's current lawsuit that I am accused of requiring Plaintiff to work under unsafe conditions which later allegedly led to medical issues for Plaintiff. During May 2016 and June 2016, I had Plaintiff working under me based on his job assignment. Prior to his assignment with me in 2016, I do not remember ever working with Plaintiff. However, while working for me, I had Plaintiff, on several occasions, clean a screen designed to catch trash which would sometimes flow through a water tank intended to treat and provide water to FSP. Approximately 300 to 400 thousand gallons of water flowed through the tank daily. In having Plaintiff clean the screen, I would provide Plaintiff with rubber boots, gloves, and a rake to remove the trash from the screen.
>
> Removal of the trash consisted of walking down a set of sixteen (16) stairs, raking the trash from the screen, shoveling it into a bucket, and carrying the bucket up the stairs to a dumpster. Plaintiff performed this process multiple times and did not complain to me about any issues during the time he was under my supervision. Eventually, and I do not remember when or why, Plaintiff was transferred from my supervision. I do not believe I have seen Plaintiff since.
>
> To my knowledge, [an] individual has never been injured […] while performing this job. I have performed this job on multiple occasions and have never suffered any injury. Plaintiff was not forced to perform this job without proper safety equipment. I have performed the job with the same equipment given to Plaintiff. I also do not ever remember Plaintiff taking issue with the job or complaining about any injury. I was never made […] aware of any injury to Plaintiff based on this work. Had Plaintiff had a problem with the work or suffered any injury known to me, I would have tried to arrange for him to perform a different task.

> I did not have Plaintiff perform the tasks he now complains about to injure, harm, or otherwise punish Plaintiff. I always showed Plaintiff the respect I would provide to any other individual and would not try to harm Plaintiff. Plaintiff's performance on this task was adequate, and I had no issues with his performance. I do not ever remember having any problems with Plaintiff.

Carter Decl. at 2-3 (enumeration omitted). Defendant Pinkston submitted a similar declaration. See Pinkston Decl. at 2-3.

In opposing Defendants' Motion, Dyal submitted his own Declaration. See P. Ex., Doc. 61-2 at 2-6, Declaration of Christopher D. Dyal (Dyal Decl.), dated September 5, 2019. In his Declaration, he states in pertinent part:

> From May 2016 through June 2016 I was housed as a prisoner at Florida State Prison West Unit. I worked on a squad that performed a task outside of the prison fence da[i]ly.
>
> At that time[,] I was working at the waste water treatment plant at that institution. Dur[]ing my employment[,] I was forced against my will to perform a task of rak[]ing, shoveling, plac[]ing the trash also human waste into a garbage can, carrying it up 16 steps and dumping it into a dumpster. I requested on multiple occas[]ions for [sic] the proper protective equipment and was denied by both my supervisors Mr. Pinkston and Mr. Carter. This tank pumped 300,000 to 400,000 gallons of raw human waste, trash, and septic water through it daily. The proper protective equipment for a small human waste clean up that does not amount to 1 gallon is mandatory for a full hazmat suit[], face sh[ie]ld, goggles, and ster[ile] shoe covers. I was only supplied with rubber gloves and rubber boots. And denied on multiple occas[]ions by both supervisors Mr. Carter and Mr. Pinkston.
>
> After weeks of this task[,] I broke out all over my body includ[]ing my face (which was so obvious any[one] would have noticed it). And informed by both supervisors Mr. Carter and Mr. Pinkston that I needed to report to medical.

I went to medical the first time and was given cream, and I had to request a Hep[a]tit[i]s test, which was performed. I was informed to go back to my dorm [and] if my problem did not go away with the cream that I was to return to medical. Approximately 2 weeks later my problem worsen[e]d and I returned to medical. The next day[,] I was im[m]ediately transfer[re]d from this institution.

While and befor[e] I was forced to complete this task[,] I was informed by Mr. Pinkston that "he was going to break me from returning to prison." I knew Mr. Pinkston from 2 prior incarceration[s] when I worked for the Florida State Prison welding shop and performed many task[s] for the water treatment plant.

Mr. Carter was well aware of the situation between Mr. Pinkston and myself and did in fact assist Mr. Pinkston with his infliction of malicious punishment in at[t]empts to stop me from coming to prison.

I have been treated by medical staff from Dept. of Corr. Fl. since this inc[i]dent and still suffer from sores inside of my mouth. This treatment and illness has been diagnosed by doctors and surge[o]ns for [the] Department of Corr. Fl. as caused from this inc[i]dent.

I do declare that the statements from both Mr. Carter and Mr. Pinkston are false and dishonest. And, do contradict the prior record also the background records for the employment of these officials also the incar[cer]ation and job placement of myself.

I do declare that the statement of facts in this present Motion for Summary Judg[]ment is false and does contradict the prior record in this case. Paragraph 1 of the statement of facts state that I have alleged temporary injuries. When in multiple documents it plainly states permanent disfigurement, mental anguish. At no time does it state temporary, showing dishonesty in this statement of facts.

I oppose all statements from Defendants in this case and all documents filed in this case.

Dyal Decl. at 2-5 (capitalization and enumeration omitted).

The chronology of events on which Dyal bases his Eighth Amendment claims is as follows. Dyal worked at the WT plant under Carter and Pinkston's supervision for about a month from May until early June 2016. See TAC at 12, 14; Dyal Decl. at 2-3; P. Ex., Doc. 61-3, Inmate Movement and Transfer History. The parties generally agree as to the WT task requirements and the safety provisions given to Dyal. See Dyal Decl. at 3; Carter Decl.; Pinkston Decl. At deposition, Dyal asserted that he performed the tasks two or three times a day for at least a month. See Def. Ex., Doc. 35-6, Deposition of Christopher Dyal (P. Depo.), at 21. Defendant Carter stated that there were other inmates who also performed the WT tasks, specifically manual cleaning of the bar screen, during the same month that Dyal worked. See Def. Ex., Doc. 35-5, Response to Plaintiff's First Set of Interrogatories to Defendants (Carter's Interrogatory Response), at 2; P. Ex., Doc. 61-1 at 12. Dyal stated that sometimes another inmate would help him carry the waste-filled garbage can up the steps to dump the contents. See P. Depo. at 19; Dyal Decl. at 3.

Neither Defendant had any issues with Dyal's job performance. See Carter Decl. at 3; Pinkston Decl. at 3. Both Defendants declared that Dyal's performance was "adequate." Id.; Carter's Interrogatory Response at 5; P. Ex., Doc. 61-1 at 15. Dyal complains that he needed additional safety gear because he was in a confined space with sewage. See TAC at 12, 14. Defendant Carter stated that the trash "is mostly rags and plastics." Carter's Interrogatory Response at 3. Neither Defendant is aware of any individual who has suffered injuries as a result of performing the tasks associated with the WT job. See Carter Decl. at 2; Pinkston Decl. at 2. Notably, Defendants, using the

same provisions as those given to Dyal, had performed the WT tasks on multiple occasions, and neither suffered any injuries. <u>See</u> Carter Decl. at 2; Pinkston Decl. at 2.

According to Dyal, Carter and Pinkston respected him as "one of the lead workers," P. Depo. at 12, because he was a certified welder, <u>see id.</u> at 13. Dyal explained that his supervisors "admired" his mechanical inclinations. <u>Id.</u> at 13, 15. He acknowledged that he liked Carter and Pinkston, and they too liked him. <u>See id.</u> at 13. He opines that Defendants never intended to injure him. <u>See id.</u> at 14, 28. At deposition, the following colloquy ensued.

> Q.      So [Carter and Pinkston] were trying – so it's your understanding they were trying to not necessarily abuse you, but kind of just show you that maybe prison is not the place to be?
>
> A.      Yeah. Well -- yeah, absolutely, without taking into consideration the dangers that they were placing me in.
>
> Q.      Okay. So[,] you don't think that they were intentionally trying to –
>
> A.      **I don't think they were intentionally trying to hurt me, but I think they were negligent in their attempts to try to punish me for being there, you see what I mean?**
>
> **They were – they were trying to say, oh, we're going to teach you a lesson, you're not coming back to prison because we like you, and didn't realize that they were going to put me down there in this tank and cause me to end up in medical and end up with a transfer from that institution also.**

<u>Id.</u> at 14-15 (emphasis added).

According to medical records, the onset of Dyal's symptoms was on or about May 15, 2016. <u>See</u> P. Exs., Docs. 15-1 at 3, FDOC Office of Health Services Skin Protocol

(stating there were "several papules clustered" on his right cheek); 61-7 at 3. Dyal states

that when he noticed sores on his face and body, he informed Carter and Pinkston, who

told him to report to sick call. <u>See</u> TAC at 16; Dyal Decl. at 3; P. Depo. at 15 ("They told

me when they s[aw] the sores and stuff all over my face, they said, you need to go to

medical tomorrow and get them to see what's wrong with you."). At deposition, Dyal

recalled that he followed Defendants' advice and went to the medical clinic. <u>See</u> P. Depo.

at 15. Medical personnel treated Dyal with a steroid cream on May 18, 2016, and advised

him to return for follow-up treatment, if necessary. <u>See</u> TAC at 16; P. Depo. at 15-16, 21;

P. Exs., Docs. 15-1 at 2-3; 61-7 at 2-4. Dyal explained his rationale for continuing to

perform his job duties.

> Even after I had the rash on me and everything, I was still
> doing it. Because they got a – they got a situation to where,
> like I said, if you're a low custody inmate working outside the
> gate, that's really high standards in prison. And you don't want
> to do anything to jeopardize that.
>
> So[,] when the supervisors or officers tell you to do
> something, you do it without – without argument and then
> grieve it later, you see what I mean?

P. Depo. at 21. Dyal returned to the medical clinic on June 7, 2016, because the sores

"got worse." <u>See</u> P. Ex., Doc. 61-7 at 5-6; P. Depo. at 16. The FDOC transferred Dyal to

Putnam Correctional Institution on June 8, 2016. <u>See</u> P. Ex., Doc. 61-3 at 2; P. Depo. at

16, 24. Dyal explained the extent of his injuries.

> Those sores went away. It took them about two years to finally
> get rid of it, but I was given all kinds of steroid creams and
> different things like that. They tested me for herpes. They
> tested me for hepatitis and –
>
> . . . .

16

> I come up clean for all those, so they weren't really sure what it was, but it was obviously some type of bacteria or something. The cream finally got rid of it. Before it got rid of it, it caused my whole mouth to be a little crooked and my – scars all over the side of my face.
>
> . . . .
>
> I was getting, like I said – but I'm not sure if it was related to the other case[16] – all down my esophagus and my nose and my mouth, sores inside of my mouth and nose. But I finally got to go see an ENT and he g[a]ve me some medication that's pretty much relieved it.

P. Depo. at 22-23; see P. Ex., Doc. 61-6 at 2-3.

Given the evidence submitted by Defendants, the Court finds they have met their initial burden of showing, by reference to their Declarations and Dyal's deposition testimony, that Defendants Carter and Pinkston's conduct did not violate Dyal's federal constitutional rights. Thus, Dyal is required to present evidence to show that there is a genuine issue for trial. This, he has not done. If this case were to proceed to trial, Dyal would have only his testimony to support his claims, and his testimony does not refute Defendants' evidence. Indeed, the exhibits submitted by Defendants support their position that they performed their duties in such a manner that was not violative of Dyal's federal constitutional rights.

In a conditions of confinement scenario involving an inmate, an officer's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment. See Marbury, 936 F.3d at 1233; see Goodman, 718 F.3d at 1331. To survive

---

[16] See Christopher D. Dyal v. C.O. Cardigan, et al., Case No. 3:17-cv-1284-J-32JBT.

summary judgment when asserting a deliberate indifference claim, a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm (objective component); (2) the defendant's deliberate indifference to that risk, i.e., the defendant actually knew that the plaintiff faced a substantial risk of serious harm (subjective component), and the defendant disregarded (by conduct that was more than mere negligence) that known risk by failing to respond to it in an objectively reasonable manner (objective component); and (3) causation, i.e., the defendant's "failure to act reasonably" caused plaintiff's injury. Marbury, 936 F.3d at 1233 (stating that plaintiff's "deliberate-indifference claim fails because he has not demonstrated a genuine factual issue as to whether the defendants were deliberately indifferent to a substantial risk of serious harm" to him); see Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003) (per curiam); Scott, 657 F. App'x at 881-83 (citing Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2015)).

The first element requires that a plaintiff show he was exposed to "conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. Undoubtedly, Dyal was committed to performing the WT tasks, even when he was suffering with sores, because such a work assignment "outside the gate" was one of the "high standards in prison." P. Depo. at 21. He testified that he believes Defendants wanted to teach him a lesson centered upon the following theme: "you're not coming back to prison because we like you…." Id. at 14. Notably, the record evidence does not support Dyal's unfounded belief that Defendants wanted to punish him. Dyal was not the only inmate to perform the WT tasks in the conditions Dyal describes. He acknowledged that there were other

inmates involved with WT duties and performing those tasks. Additionally, Defendants were never aware of any injury or harm to other inmates who performed the same tasks. In fact, Defendants performed the same work as Dyal, and never suffered any injuries. The Eleventh Circuit has explained that isolated incidents do not satisfy the "substantial risk" standard articulated in Farmer. See Purcell, 400 F.3d at 1320 ("[O]ccasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable."). The lack of other injurious incidents, combined with Defendants' provision of protective safety gear, and their own performance of the work without negative consequences or injury, negates any suggestion that Dyal was exposed to conditions posing a substantial risk of serious harm. On this record, Dyal fails to produce sufficient evidence showing that the challenged prison condition was an extreme deprivation that posed an unreasonable risk of serious damage to his health or safety. See Marbury, 936 F.3d at 1233; Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004).

Even assuming the existence of a substantial risk of serious harm, Dyal must produce evidence that Defendants were deliberately indifferent to that risk. It is "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." Farmer, 511 U.S. at 828 (citations omitted). The deliberate indifference standard requires the plaintiff to demonstrate that the prison official "was subjectively aware" of a risk of harm; mere negligence is not sufficient. Id. at 829, 835-36. "The known risk of injury must be a 'strong likelihood, rather than a mere possibility' before a guard's failure to act can constitute deliberate indifference." Brown v.

Hughes, 894 F. 2d 1533, 1537 (11th Cir. 1990); see also Bowen v. Warden, Baldwin State Prison, 826 F.3d 1312, 1321 (11th Cir. 2016) ("[I]t is only a heightened degree of culpability that will satisfy the subjective knowledge component of the deliberate indifference standard, a requirement that is 'far more onerous than normal tort-based standards of conduct sounding in negligence.'"). Thus, to establish an Eighth Amendment violation, an inmate must show a prison official "actually (subjectively) knows that an inmate is facing a substantial risk of serious harm, yet disregards that known risk by failing to respond to it in an (objectively) reasonable manner." Rodriguez, 508 F.3d at 617 (citing Farmer, 511 U.S. at 837, 844) (footnote omitted).

Here, Dyal fails to produce evidence suggesting that either Defendant actually knew Dyal faced a substantial risk of serious harm, and disregarded that known risk by failing to respond to it in an objectively reasonable manner. Notably, Dyal himself asserts that Defendants were not intentionally trying to hurt him, but instead were negligent when they tried to teach him a lesson. See P. Depo. at 14. He points to no evidence supporting even an inference that the Defendants were aware that Dyal faced a substantial risk of harm in completing his assigned duties. Dyal also acknowledges that when his sores appeared, Defendants advised him to report to the medical clinic, which he did. See id. at 15. He testified: "I don't really think [Defendants] realized that they were going to cause me to break out with a bacteria [sic] or whatever all over my body and scar my face all up." Id. at 14. Medical personnel sent Dyal back to his dormitory, and advised him to return for follow-up care, if necessary. See id. at 15-16. Dyal, however, chose to return to work with "the rash" because he, Dyal, did not want to "jeopardize" his opportunity to work

"outside the gate." <u>Id.</u> at 21. Thus, even assuming "dereliction of duty" on Defendants'

part contributed to the incident, Dyal fails to produce evidence showing Carter and

Pinkston were deliberately indifferent to his health and safety needs. <u>Goodman</u>, 718 F.3d

at 1334 (finding the dereliction of duty to be disturbing, but affirming the district court's

granting of defendants' summary judgment motion based on Eighth Amendment law).

The Eleventh Circuit has stated:

> Our cases are clear that to survive summary judgment on a
> deliberate indifference claim, the plaintiff must present some
> evidence of prison officials' subjective awareness of a
> substantial risk of serious harm to the inmate. <u>See, e.g.</u>,
> <u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir.1999)
> (explaining that "a finding of deliberate indifference requires a
> finding of the defendant's subjective awareness of the
> relevant risk" (internal quotation marks omitted)). [Plaintiff]
> has adduced no evidence that either [Defendant] was
> subjectively aware of the peril to which [Plaintiff] was exposed
> on the night in question, and that failure is fatal to his claim.

<u>Goodman</u>, 718 F.3d at 1333-34.

Defendants assert, and this Court agrees, that there remain no genuine issues of

material fact. Given the strong and consistent Declarations of Defendants Carter and

Pinkston and Dyal's failure to provide any evidence other than his own beliefs, no

reasonable jury could find for Dyal under these circumstances. <u>See</u> <u>id.</u> at 1332

(recognizing that "to defeat a motion for summary judgment, [the plaintiff] must adduce

specific evidence from which a jury could reasonably find in his favor; [t]he mere existence

of a scintilla of evidence in support of [his] position will be insufficient"). As such,

Defendants' Motion is due to be granted as to Dyal's Eighth Amendment claims against

them.

## B. Fourteenth Amendment

Dyal's due process claim is somewhat confusing and inconsistently articulated. In his Complaint, he asserts that Defendants violated his Fourteenth Amendment right when they deprived him of a liberty interest. <u>See</u> TAC at 13, 15. Defendants maintain that the due process clause is inapplicable because Dyal's claim falls within the protections of the Eighth Amendment. <u>See</u> Motion at 10. In his Amended Response, Dyal maintains that he has liberty interests in educational programs (such as the WT class), protective clothing and equipment, and access to medical treatment. <u>See</u> Amended Response at 16. He also states that "mandatory safety precautions" were not followed. <u>Id.</u> at 17. Additionally, he maintains that he "was subjected to a situation that caused a significant hardship" on him. <u>Id.</u>

To the extent that Dyal's due process claim is presented as an alternative means of demonstrating that Defendants failed to protect him from an alleged known risk of harm that existed in the prison's WT plant, the Court finds that Dyal is not entitled to relief under the due process clause because the Eighth Amendment provides an explicit source of constitutional protection for his injury. <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989); <u>Cty. of Sacramento v. Lewis</u>, 523 U.S. 833, 842 (1998) ("[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (quoting <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994)); <u>Edwards v. Gilbert</u>, 867 F.2d 1271, 1274 (11th Cir. 1989) (rejecting a substantive due process claim because it added nothing to plaintiff's case

since he was entitled to protection under the Eighth Amendment). Because the Eighth Amendment provides a source of constitutional protection for his injury and because Dyal has asserted a deliberate indifference claim, the due process clause fails to provide a separate legal basis for Dyal's claim.

Moreover, even if Defendants violated state law or safety protocols by permitting a potentially unsafe condition and/or failing to provide additional protective gear,[17] Dyal has failed to establish a Fourteenth Amendment due process violation.

> In prison cases ... the Supreme Court has been conspicuously reluctant to recognize state laws as creating rights protected by the federal constitution. The Court has recognized such rights only where the state has used mandatory language to specify procedures which must be used or findings which must be made before benefits are taken away or burdens are placed on individual prisoners.

Edwards, 867 F.2d at 1274. Dyal has not presented evidence that Defendants deprived him of a benefit or imposed a burden without providing him due process (a hearing).

Insofar as Dyal asserts that he suffered an atypical and significant hardship under Sandin v. Conner, 515 U.S. 472 (1995), the Court finds that Dyal's assertions do not demonstrate an atypical and significant hardship. Looking at the nature of the deprivation, the Sandin Court explained that state-created liberty interests rising to the level of requiring due process protection generally will be limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical

---

[17] Dyal asserts that Defendants should have provided him with additional protective equipment. See P. Exs., Docs. 15-2 at 4, FDOC Housekeeping Procedures Involving Potential Exposure to Blood and Body Fluids Lesson Plan; 15-3.

and significant hardship on the inmate in relation to the ordinary incidents of prison life."

Id. at 484 (internal citations omitted). Notably, in the wake of Sandin, courts have reached

inconsistent conclusions regarding what constitutes an "atypical and significant hardship"

or how to determine the baseline of the "ordinary incidents of prison life." Wilkinson v.

Austin, 545 U.S. 209, 223 (2005).

Consistent with Sandin and Wilkinson, the Eleventh Circuit has recognized that a

prisoner can be deprived of his liberty in violation of due process in two ways:

> The first is when a change in a prisoner's conditions of
> confinement is so severe that it essentially exceeds the
> sentence imposed by the court. See Sandin v. Conner, 515
> U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L.Ed.2d 418 (1995);
> see, e.g., Vitek v. Jones, 445 U.S. 480, 492-93, 100 S.Ct.
> 1254, 1263–64, 63 L.Ed.2d 552 (1980) (holding that a
> prisoner is entitled to due process prior to being transferred to
> a mental hospital). The second is when the state has
> consistently given a certain benefit to prisoners (for instance,
> via statute or administrative policy), and the deprivation of that
> benefit "imposes atypical and significant hardship on the
> inmate in relation to the ordinary incidents of prison life."
> Sandin, 515 U.S. at 484, 115 S. Ct. at 2300; see, e.g., Wolff
> v. McDonnell, 418 U.S. 539, 558, 94 S. Ct. 2963, 2976, 41
> L.Ed.2d 935 (1974) (prisoners may not be deprived of
> statutory "good-time credits" without due process); cf. Dudley
> v. Stewart, 724 F.2d 1493, 1497-98 (11th Cir. 1984)
> (explaining how the state creates liberty interests). In the first
> situation, the liberty interest exists apart from the state; in the
> second situation, the liberty interest is created by the state.

Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999) (footnote omitted); see also Magluta

v. Samples, 375 F.3d 1269, 1282 (11th Cir. 2004) (recognizing "the new Sandin

standard," under which there is "no liberty interest and no constitutional violation ... if the

Sandin 'atypical and significant hardship' standard [is] not met"). Notably, the ultimate

determination of whether a liberty interest is implicated requires a fact-intensive inquiry

24

as to what constitutes an "atypical and significant hardship" and where to look to determine the baseline of the "ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484; <u>see</u> <u>Magluta</u>, 375 F.3d at 1284 (vacating the district court's dismissal as to plaintiff's due process claims for further development of the record); <u>Bass</u>, 170 F.3d at 1318; <u>Spaulding v. Woodall</u>, 551 F. App'x 984, 987 (11th Cir. 2014); <u>Wallace v. Hamrick</u>, 229 F. App'x 827, 830 (11th Cir. 2007) ("The record before us does not contain adequate facts with respect to the conditions of Wallace's confinement as compared with the conditions of confinement of his fellow inmates to determine whether Wallace's confinement imposed an atypical and significant hardship 'in relation to the ordinary incidents of prison life.'") (citation omitted)). Dyal's one-month job assignment (at which he was provided a rake, rubber boots, and rubber gloves) was not an atypical and significant hardship in relation to the ordinary incidents of prison life. Other inmates and Defendants performed the same tasks without injury. When Dyal became aware of the sores on his face and body, he followed Defendants' advice to report to the medical clinic, where medical personnel provided immediate and follow-up medical treatment. As such, Defendants' Motion is due to be granted as to Dyal's Fourteenth Amendment due process claim against them.

Plaintiff also states that Defendants violated his Fourteenth Amendment right to equal protection of the law. <u>See</u> TAC at 13, 15. To establish a claim cognizable under the Equal Protection Clause, an inmate must show that "(1) he is similarly situated to other prisoners who received more favorable treatment[,] and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." <u>Sweet v. Sec'y, Dep't. of Corr.</u>, 467 F.3d 1311, 1318-19

(11th Cir. 2006) (citing <u>Jones v. Ray</u>, 279 F.3d 944, 946-47 (11th Cir. 2001); <u>Damiano v. Fla. Parole and Prob. Comm'n</u>, 785 F.2d 929, 932-33 (11th Cir. 1986)). Taking Dyal's assertions as true, he neither alleges the existence of any similarly-situated comparator, nor presents any facts that Defendants discriminated against him on some constitutionally protected basis. As such, Defendants' Motion is due to be granted as to Dyal's Fourteenth Amendment equal protection claim against them.

### C. Qualified Immunity

Defendants Carter and Pinkston assert that they are entitled to qualified immunity because they did not commit any federal statutory or constitutional violation. <u>See</u> Motion at 13-17. Under the doctrine of qualified immunity, Defendants may claim they are entitled to qualified immunity from monetary damages in their individual capacities. It is undisputed that Defendants were engaged in discretionary functions during the events at issue. To defeat qualified immunity with respect to these Defendants, Dyal must show both that a constitutional violation occurred, and that the constitutional right violated was clearly established. Upon review, Defendants are entitled to qualified immunity from monetary damages in their individual capacities as to Dyal's claims against them. Therefore, Defendants' Motion as to their assertion of qualified immunity is due to be granted.

Therefore, it is now

**ORDERED**:

1.      Defendants Carter and Pinkston's Motion for Summary Judgment (Doc. 35) is **GRANTED.**

2.	Plaintiff's Motion for Extension of Time (Doc. 50) is **DENIED as moot**.

3.	The Clerk shall enter judgment in favor of Defendants Carter and Pinkston, terminate any pending motions, and close the case.

4.	Plaintiff's request for Rule 56(f) relief is **DENIED**.[18]

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of March, 2020.

MARCIA MORALES HOWARD
United States District Judge

sc 3/24
c:
Christopher D. Dyal, FDOC # 958733
Counsel of Record

---

[18] The Court notes that a request for affirmative relief is not properly made when simply included in a response to a motion. See Fed. R. Civ. P. 7(b); see also Rosenberg v. Gould, 554 F.3d 962, 965 (11th Cir. 2009) (quoting Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999)). Regardless, Defendants are entitled to summary judgment in their favor.